178 So.2d 761

**Mr. and Mrs. Herman McCOY**

**v.**

**PACIFIC COAST FIRE INSURANCE CO. et al.**

**No. 47369.**

Jan. 18, 1965.

Rehearing Granted Feb. 23, 1965.

On Rehearing July 2, 1965.

Concurring and Dissenting Opinion Filed July 29, 1965.

Rehearing Denied Sept. 30, 1965.

Clay, Coleman, Dutrey & Thomson, Jack W. Thomson, Jr., New Orleans, for applicants.

Bienvenu & Culver, P. A. Bienvenu, for defendant and third-party plaintiff.

Breard Snellings, Sessions, Fishman, Rosenson & Snellings, New Orleans, for defendant-respondent.

SANDERS, Justice.

The plaintiffs, Mr. and Mrs. Herman McCoy, sued for $19,484.00 on a fire insurance policy, with an alternative demand against the insurance agency that sold the policy. Made defendants were the Pacific Coast Fire Insurance Company, the insurer, The American Employers' Insurance Company, the surety on Pacific's state qualifying bond, and the Montaldo Insurance Agency, Inc., the seller of the policy.

The policy insured the plaintiffs' building, described as "Apartments," in the amount of $20,000.00. The Pacific Coast Fire Insurance Company resisted payment on the ground that the plaintiffs had breached a representation or warranty by using a portion of the building as a restaurant, greatly increasing the risk of loss.

Pacific also filed a third party petition seeking to recover from Montaldo Insurance Agency, Inc. any sum for which it became liable, on the ground that the agency negligently failed to describe the use and occupancy of the insured building.

The district court rejected the plaintiffs' demands as to all defendants and dismissed the suit. The plaintiffs appealed. The Court of Appeal affirmed. 164 So.2d 386. Upon application of the plaintiffs, we granted certiorari to review the judgment. 246 La. 604, 165 So.2d 488.

The facts are these: In 1955 Mr. and Mrs. Herman McCoy purchased a commercial building at 2912–2914 Thalia Street in the City of New Orleans. The building contained rooms, apartments, and space for a restaurant. When purchased, the restaurant space was not in use. The McCoys insured the building against fire through Montaldo Insurance Agency, Inc. for $15,-000.00. The policy described the premises as "apartments."

In 1956 the plaintiffs began to operate the restaurant in the building.

In March, 1958, the McCoys requested the Montaldo Agency to increase its fire insurance coverage to $20,000.00. Because Montaldo no longer represented the insurer that issued the 1955 policy, it secured a separate policy for $5,000.00 from Pacific Coast Fire Insurance Company, defendant in this suit. When the original $15,000.00 policy expired in April, 1958, Pacific increased its policy to $20,000.00. This policy described the insured property as "apartments," although the 1956 Rate Card of the Louisiana Rating and Fire Prevention Bureau, in the files of the Montaldo Agency, classified the property as "Tenements."

Based upon the apartment classification, the McCoys paid $253.00 for three years insurance coverage. Admittedly the premium would have been $680.00 if the property had been correctly described as containing a restaurant.

On May 29, 1959, the Louisiana Rating and Fire Prevention Bureau sent new rate cards to Montaldo Agency for Rerate Zone No. 6 of Orleans Parish. The letter of transmittal advised that the rates were effective May 29, 1959, though a revised rate was not to be endorsed on existing policies except on the anniversary date. The rate card for 2912 Thalia Street reflected that the insured property at 2912–14 Thalia Street was being used as a restaurant, rooms, and apartments.

A fire damaged the insured property on November 6, 1960. After the lapse of

sixty days from proof of loss and demand, the McCoys brought the present suit to recover the fire damage, penalties, and attorney fees.

LSA–R.S. 22:692 provides:

"No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor. Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured."

Under the statute, the breach of a policy representation is no defense if the facts constituting the breach existed at the time of the loss and were known by the insurer or its agent, in the absence of fraud or collusion.

The plaintiffs concede that the property was actually being used as a restaurant at the time of the fire loss. They strongly contend, however, that the personnel of Montaldo Insurance Agency, Inc. had either actual or constructive notice of the use of the property as a restaurant. Hence, they assert the policy is enforceable under the statute.

The main issue is whether the insurance agency had knowledge of the restaurant-use before the fire loss within the intendment of LSA–R.S. 22:692.

The plaintiffs produced testimony that at the expiration of the original $15,000.00 policy in April, 1958, Maurice Pailet, plaintiffs' representative, delivered to Montaldo Insurance Agency a memorandum noting the presence of a restaurant and ordering a new policy for $20,000.00. The testimony, however, is contradicted by an agency official. We find it unnecessary to resolve this conflict in the testimony.

The evidence clearly reflects that information of the restaurant occupancy was

on an official Louisiana Rating and Fire Prevention Bureau rate card in the files of Montaldo Insurance Agency, Inc. for seventeen months before the fire.

The Court of Appeal declined to charge the agency with knowledge of the restaurant, stating:

"We decline to charge either Montaldo Insurance Agency, Inc., or the insurer with knowledge merely because the rate cards were delivered to them. The record shows that the cards were delivered in large quantities, and each card listed several properties. The cards are used when a policy is issued, to obtain rate information; · but we find no obligation even implied in the statute to use the cards for other purposes."

We do not agree with this holding.

The Louisiana Rating and Fire Prevention Bureau is authorized by law to furnish information as to both rates and risks from inspection of the premises.[1] The risks shown on its rate cards are those found to exist prior to the issuance of the cards and reflect the current use of the insured buildings.

■ The Montaldo Agency, it is true, made no effort before the fire loss to match the rate cards with existing insurance

policies. It defended this failure on the grounds that a large number of cards were received on this occasion and that its policy file was set up by the names of the insured, rather than street addresses, as were the rate cards. Under the agency practice, the rate card was matched with the insurance policy only when the policy was renewed. We do not think, however, that filing methods should prevent an insurance agency from being charged with knowledge of information on a Louisiana Rating and Fire Prevention Bureau rate card delivered to the agency and retained in its files. A person cannot disclaim knowledge by closing his eyes to an express notice of facts.[2] We conclude that the policy breach was known to Montaldo Insurance Agency, Inc., the agent of the insurer, within the intendment of LSA–R.S. 22:692. Hence, the breach affords no defense to the suit on the policy.

■ We fix the amount of the fire loss at $16,002.00. The plaintiffs are entitled to judgment in this sum against Pacific Coast Fire Insurance Company on its fire insurance policy. American Employers' Insurance Company, the surety on Pacific's state qualifying bond, is not liable in this proceeding.[3]

■ The plaintiffs have sought penalties and attorney fees under the provisions of

1. LSA–R.S. 22:1405.
2. 39 Am.Jur., Notice and Notices, § 12, pp. 238–241; 66 C.J.S. Notice §§ 3 and 4, p. 637–638.
3. LSA–R.S. 22:1021–22:1023.

LSA-R.S. 22:658. Under the statute, the penalties may be assessed only when the refusal to pay is arbitrary, capricious, or without probable cause. Our review of this case has convinced us that the insurer had reasonable grounds upon which to resist payment and seek court adjudication. Hence, we reject the demand for penalties and attorney fees.

■ In its third party petition, the Pacific Coast Fire Insurance Company seeks judgment against Montaldo Insurance Agency, Inc. for the amount of its liability based upon that agency's negligent failure to describe the use of the insured building as including a restaurant. Montaldo asserts that the third party demand is not before this Court. The Montaldo contention is well founded. The plaintiffs alone appealed to the Court of Appeal. Pacific did not appeal from the district court judgment. The Court of Appeal could not have rendered judgment against Montaldo on the third party demand. A judgment may be rendered or revised as between appellees only through an appeal by the appellee who seeks appellate action. We granted a writ to review the Court of Appeal judgment. Hence, we cannot consider the relief sought in the third party demand of Pacific against the Montaldo Insurance Agency, Inc.[4]

4. LSA-C.C.P. Art. 2087; Coleman v. Cousin, 128 La. 1094, 55 So. 686; Howard v. Insurance Company of North

For the reasons assigned, the judgment of the Court of Appeal is reversed, and judgment is rendered in favor of plaintiffs, Mr. and Mrs. Herman McCoy, against Pacific Coast Fire Insurance Company in the sum of $16,002.00, together with legal interest thereon from judicial demand until paid and all costs of this suit; and in all other respects the demands of plaintiffs are rejected.

On Application for Rehearing.

PER CURIAM.

A rehearing is granted limited to a consideration of the third party claim of Pacific Coast Fire Insurance Co. against Montaldo Insurance Agency, Inc. In all other respects, the rehearing is refused.

HAWTHORNE and SUMMERS, JJ., are of the opinion an unlimited rehearing should be granted.

ON REHEARING

SUMMERS, Justice.

The plaintiffs, Mr. & Mrs. Herman McCoy, sued Pacific Coast Fire Insurance Company and American Employers' Insurance Company for loss on a policy of fire insurance covering a building on Thalia Street in New Orleans. Alternatively, the McCoys sought recovery against Mon-

America, La.App., 159 So.2d 560, and the authorities therein cited.

taldo Insurance Agency, through whom the policy was obtained, if full recovery was not allowed under the policy issued by Pacific.

Both defendants denied that the policy covered the fire loss asserting that the premises, though listed as "apartments", contained a restaurant which was in operation at the time of the loss. The operation of this restaurant, defendants assert, greatly increased the risk and if that fact had been known to the insurer or the agent a higher premium would have been due. Defendants urged that failure of the McCoys to properly represent the change in use voided the policy.

In a third party action Pacific impleaded Montaldo seeking judgment against Montaldo in the event Pacific were held to owe the McCoys.

After trial there was judgment in favor of defendants Pacific and Montaldo and against plaintiffs dismissing their suit.[1]

There was no adjudication of the third party demand.

Plaintiff appealed.

The Court of Appeal, Fourth Circuit, affirmed. 164 So.2d 386 (1965).

We granted certiorari upon the application of plaintiff, 246 La. 604, 165 So.2d 488 (1965).

In our original opinion, we found that Montaldo, as agent for Pacific, had constructive knowledge of the use of the premises, which was imputable to Pacific. Pacific's defense of failure to properly represent the use of the premises was, therefore, rejected and judgment was rendered in favor of the McCoys and against Pacific.

We were of the opinion that the third party demand of Pacific was not before the Court of Appeal because Pacific did not appeal from the district court judgment. Consequently, the Court of Appeal could not have rendered judgment against Montaldo on the third party demand, because, as we stated, "A judgment may be rendered or revised as between appellees only through an appeal by the appellee who seeks appellate action." Thus when we granted certiorari to review the Court of Appeal judgment we could not consider the relief sought in the third party demand of Pacific against Montaldo, for that question was never properly on appeal before the Court of Appeal.

This rehearing is limited to a consideration of whether we can adjudicate the third party claim of Pacific against Montaldo, or whether the case should be remanded to the trial court for adjudication of the third party demand.

1. American Employers' Insurance Company was dismissed from the suit by ruling on an exception.

Upon reconsideration we are convinced that our original opinion was correct.

Article 2087 of the Code of Civil Procedure as amended by Act 92 of 1962 applies here, and, in pertinent part, it provides:

" * * *

"When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised or reversed as to any other appellee, may take a devolutive appeal therefrom, and furnish the security therefor, within the delays allowed in the first paragraph of this article (90 days), or within ten days of the granting of the first devolutive appeal in the case, whichever is later." (Parentheses added.)

Prior to the foregoing enactment, in cases involving three or more parties, when one obtained an order for a devolutive appeal on the last day, the other parties had no opportunity to take an appeal to protect their position against any change through the first appeal. See Comment, La.Code Civ.P. art. 2087 (1962).

This article does not cover the same situation as that presented in the case of Coleman v. Cousin, 128 La. 1094, 55 So. 686 (1911), where Mrs. Coleman and her children instituted a petitory action against the defendant Cousin, who called his vendor in warranty. The trial court rendered judgment for defendant, decreeing him to be the owner of the land in dispute. Plaintiffs appealed and defendant answered the appeal, asking that if the judgment in his favor were reversed he have judgment against his warrantor. After reversing the trial court judgment in favor of the defendant, this court declared:

"We cannot grant the relief sought. Defendant and his warrantor are both appellees, and the Court is powerless to amend the judgment between them, or, rather, to render judgment between them. There was no judgment between them in the lower court; and there is no appeal before us affecting their rights toward one another."

The court could not entertain the call in warranty in the Coleman case as there had been no adjudication of that issue between the parties to the call in warranty in the trial court. It followed that there could be no appeal from such an unadjudicated issue between parties, one of whom was not mentioned or contemplated in the trial court judgment. The court was in error in the Coleman case when it referred to the warrantor as an appellee. Only Cousin was an appellee.

Thus the amendment to Article 2087 can assure one of several appellees a right to appeal as to other appellees mentioned in the court's judgment when the appellees as to whom an appellee appeals are affected

by that judgment and when the first appeal is lodged at the last minute. The allowance of the additional time to the appellee in such a case permits him to seek a modification, revision or reversal of the judgment as to another appellee which might otherwise have been foreclosed by the last minute appeal.

It must be observed that the amendment to Article 2087 requires such an appeal only when the appellee "seeks to have the judgment appealed from modified, revised, or reversed as to any other appellee." It does not and cannot apply to a case where the parties are not affected by the judgment appealed from (as in this case, where Pacific and Montaldo in their capacities as third party plaintiff and defendant are unaffected by the judgment appealed from), or when a party is entirely satisfied with the judgment. Nor does it require an appeal concerning issues which have not been adjudicated in the trial court between parties in different capacities than that contemplated in the judgment appealed from. In other words, Article 2087 can only contemplate an appeal by an appellee against parties and on issues which were the subject of a judgment before the trial court.

Therefore, Pacific, in its capacity as third party plaintiff, could not appeal against Montaldo in its capacity as third party defendant concerning issues between them in those capacities which had never been adjudicated by the trial court.

There being no appeal before us relating to the third party demand, we cannot adjudicate the issues between the parties to that demand. The third party demand is not here because the trial court retained jurisdiction of that remaining, incidental aspect of the case to adjudicate the issues it presented should the event upon which the third party demand was predicated occur by a reversal on appeal of the trial court's judgment between the principal plaintiff and the principal defendant. Article 1915 of the Code of Civil Procedure supports this conclusion for it provides:

"A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:

"(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or intervenors;

\*        \*        \*        \*        \*        \*

"If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case."

That is what happened here. The trial court did dismiss the suit as to the principal plaintiff and defendants, but it did nothing

as to the third party plaintiff and the third party defendant—it dismissed the suit as to less than all of the parties involved. The judgment was, therefore, partial. Hence the trial court necessarily retained jurisdiction over the parties not mentioned in its judgment and as to the remaining, unadjudicated issues of the case. The reason for this is obvious: The trial court could do nothing concerning the third party plaintiff's demand against the third party defendant because that demand was predicated upon the happening of an event which had not then occurred—a judgment against the third party plaintiff (Pacific) in favor of the principal plaintiff (the McCoys). This event did not occur until, by the judgment of this court, the judgment of the trial court was reversed and the McCoys' demand against Pacific was allowed. The third party demand was not until that time in a posture for adjudication by the trial court. It is now.

· Prior to the enactment of Article 1915 there was no precise rule for the rendition of partial judgments. This article permits, in a proper case, what was formerly reprobated as piecemeal litigation. It is the liberality of our procedural rules with respect to the joinder of parties which makes this piecemeal litigation necessary to prevent injustice in a case like this one.

Subject to the views herein expressed the original judgment herein is reinstated and made final; and the case is remanded for the limited purpose of permitting the third party demand of Pacific against Montaldo to be proceeded with according to law. La.Code Civ.P. art. 2164; cf. Hope v. Gordon, 186 La. 697, 173 So. 177 (1937).

HAMITER, J., concurs in reinstating the original judgment; he dissents as to the remand.

SANDERS, J., concurs in reinstating the original judgment but dissents in part.

SANDERS, Justice (concurring in part and dissenting in part).

I fully concur in the holding that the third party demand is not before this Court and in the reinstatement of the original judgment based on this holding.

I am compelled to dissent, however, from the remand of the case. As I view it, the remand is founded upon faulty procedural doctrine, the effect of which will be to burden the courts and litigants with piecemeal litigation and multiple appeals.

Briefly stated, the majority theory is that the district court rendered only a partial judgment in this case, which left the third party demand pending without disposition in that court. Hence, it is reasoned, the case should be remanded for the purpose of permitting the third party demand to be litigated.

If the third party demand is still pending in the trial court, as the majority holds, there is nothing in this court to remand. The rehearing was "limited to a consideration of the third party claim." A final judgment has terminated the case as to all other matters. Furthermore, from the standpoint of the trial court, no remand is needed to permit that court to dispose of the third party demand, already pending there.

Serious objection, however, must be taken to the premise that the trial court rendered only a partial judgment, which left the third party demand pending and undisposed of. The record reflects that in its third party demand, the Pacific Coast Fire Insurance Company sought to recover from Montaldo Insurance Agency the amount of any judgment that might be rendered against Pacific in favor of the plaintiffs. After an answer had been filed to both the main demand and the third party demand, the case was assigned for trial. The parties produced their evidence upon the main demand and third party demand. The case was then submitted to the Court for decision. In written reasons, which referred to the third party demand, the court concluded that Pacific "did not know" of the restaurant-use until after the fire. For this reason, the court concluded "there will be judgment in favor of the defendants dismissing plaintiffs' suit at their costs." The subsequent, formal judgment recited that

the "cause" had been heard and submitted to the court for adjudication. For the written reasons previously filed, the court rendered judgment in favor of the defendants, Pacific and Montaldo, dismissing plaintiffs' suit at their costs.

Thus, the third party demand was tried, submitted to the court for decision, and referred to in the court's reasons for judgment. Although the formal judgment did not mention the third party demand, it adjudicated the "cause." It terminated the suit as to all parties. This is so because the third party demand was completely incidental to and dependent upon the principal claim. If the plaintiffs failed in the principal demand, the third party demand also failed. When a judgment is silent as to "any demand which was an issue in the case under the pleadings," such silence constitutes a rejection of the demand. Succession of Foster, 240 La. 269, 122 So.2d 96. The judgment operated as a dismissal of the third party demand. See True v. McDonald, La.App., 161 So.2d 394; Howze v. Arrow Transportation Company, 5 Cir., 1960, 280 F.2d 403, certiorari denied, 364 U.S. 920, 81 S.Ct. 285, 5 L.Ed.2d 260.

In Howze v. Arrow Transportation Company, supra, the court considered the effect of a judgment similar to that in the present case on a third party demand. The court reasoned that the rejection of the principal demand also disposed of the dependent third party demand in stating:

"Thus, Arrow's claim against Zurich and Zurich's right to reimbursement from Howze are both conditioned and dependent on the success of Howze's action against Arrow. And, of course, judgment in favor of Arrow would dispose of Arrow's claim against Zurich and Zurich's claim against Howze."

To support its holding that the trial court rendered a partial judgment, non-dispositive of the third party demand, the majority relies upon Article 1915 of the LSA–Code of Civil Procedure, which provides:

"A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:

"(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or interveners;

"(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969;

"(3) Grants a motion for summary judgment, as provided by Articles 966 through 969; or

"(4) Renders judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.

"If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case."

As I view the Article, it has no application to the present case. It merely authorizes partial judgments, that is, it vests discretion in the court to render partial judgments in the four situations described. To render such a judgment, however, the court must indicate by appropriate language that only a partial disposition is being made or that the court is retaining jurisdiction to adjudicate other issues.

Neither the trial judge's written opinion nor the formal judgment contains any indicia of partial judgment. As previously noted, the recitals indicate a disposition of the entire case. The trial judge obviously did not intend to keep part of the case under advisement.

Since no partial judgment was rendered, it becomes unnecessary to consider whether the case falls under either of the four situations described in Article 1915, LSA–C.C.P.

For the reasons assigned, I concur in the reinstatement of the original judgment but respectfully dissent from the remand.